**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

KESNER JUNIOR LIBERAL,

        Plaintiff,

  v.

EDUARDO R. ESTRADA, individually
and in his capacity as a Menlo Park
police officer, *et al.*,

        Defendants.
_____

No.  C 07-00024 SBA

**ORDER**

[Docket No. 38]

**REQUEST BEFORE THE COURT**

     Before the Court is defendants' Motion for Summary Judgment or in the Alternative for

Summary Adjudication (the "Motion") [Docket No. 38].  Plaintiff Kesner Junior Liberal has sued

Menlo Park Police Department Officers Eduardo Estrada, Jeff Keegan, Richard Wheaton, Jaimee

Tassio, Ronald Prickett, Jaime Romero, and Barbara Ayres in their official and individual capacities,

and the City of Menlo Park, California, under 42 U.S.C. § 1983, for violating his civil rights under

the Fourth, Fifth, and Fourteenth Amendments, arising from a traffic stop and detention.  Mr. Liberal

alleges defendants unreasonably searched and seized him, violated his due process, used excessive

force, and discriminated against him based on his race.  Mr. Liberal has also sued defendants for

assault, battery, negligence, negligent infliction of emotional distress ("NIED"), intentional

infliction of severe emotional distress ("IIED"), false imprisonment, and violating section 52.1 of

the California Civil Code.  Defendants assert they are qualifiedly immune, that Mr. Liberal has

failed to state a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and

California immunities or privileges.  The Court finds this matter suitable for disposition without a

hearing, under Federal Rule of Civil Procedure 78(b).  For the reasons discussed below, the Motion

is DENIED in part and GRANTED in part.

///

///

# BACKGROUND

## I.  The Initial Stop

On October 21, 2005, at approximately 1:40 a.m., plaintiff Kesner Junior Liberal, who is African American, was driving his college friends Keith Hamilton and Tony Martinez northbound in the middle lane of El Camino Real, a six-lane street, in Menlo Park, California.  Ex. A to Decl. of John Flegel, Dep. of Kesner Junior Liberal ("L. Dep.") at 24, 29-30, 34, 36; Ex. B to Decl. of Anthony Boskovich ("B. Decl."), Dep. of Keith Hamilton ("H. Dep.") at 37-38, 43; Ex. C to B. Decl., Dep. of Eduardo Estrada ("E. Dep.") at 104, 142; Ex. 2; Ex. D to B. Decl., Dep. of Jeffrey Keegan ("K. Dep.") at 91.  Traffic was light and he was obeying all traffic laws.  L. Dep. at 34; H. Dep. at 42, 48; E. Dep. at 56, 103; Ex. K to B. Decl.  His front windows were rolled down, L. Dep. at 60; H. Dep. at 61, and although his rear and rear passenger windows were tinted, his front side windows were not, L. Dep. at 54, 56-57; H. Dep. at 79, 92-95, 107.

Mr. Liberal and Mr. Hamilton saw a police car north of them on El Camino, facing south and stopped at a red light.  L. Dep. at 35, 36, 37, 40, 42-43; H. Dep. at 40-41, 44, 76.  They testified that as they passed the police car, the officer established eye contact with Mr. Liberal.  *Id.*  The officer, defendant Officer Estrada, testified that he saw the driver's front side window, which was rolled up, was tinted in violation of California Vehicle Code § 26708(a)(1)[1] and 276708.5.[2]  E. Dep. at 102; Estrada Decl. ("E. Decl."), ¶ 5.

///

---

[1] Section 26708 provides, in part:
(a)(1) No person shall drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows. [¶] . . . .  [¶] (b) This section does not apply to any of the following: [¶] . . . .  [¶] (4) Side windows which are to the rear of the driver.  [¶] . . . .  [¶] (8) The rear window or windows, when the motor vehicle is equipped with outside mirrors on both the left- and right-hand sides of the vehicle that are so located as to reflect to the driver a view of the highway through each mirror for a distance of at least 200 feet to the rear of the vehicle.

[2] Section 26708.5(a) states:
(a) No person shall place, install, affix, or apply any transparent material upon the windshield, or side or rear windows, of any motor vehicle if the material alters the color or reduces the light transmittance of the windshield or side or rear windows, except as provided in subdivision (b), (c), or (d) of Section 26708.

2

1   As Mr. Liberal continued north, he observed the police car's lights activate, but not its siren,

2   as it made a U-turn.  L. Dep. at 38, 40-41; H. Dep. at 44; E. Dep. at 105-106.  To evade Officer

3   Estrada, Mr. Liberal made a right turn onto Oak Grove Avenue, while the officer was 300 to

4   350 feet behind him.  L. Dep. at 38, 41-45, 47-49, 73; E. Dep. at 111, 163-164; Docket No. 50.  Mr.

5   Liberal made an immediate left into a darkened parking lot behind a Foster's Freeze, just as Officer

6   Estrada was turning right onto Oak Grove.  Mr. Liberal then drove behind the Foster's Freeze,

7   parked by a dumpster, and turned off his lights.  Officer Estrada pulled into the lot at a high rate of

8   speed, parked behind Mr. Liberal's vehicle, and illuminated it with his spotlight.  L. Dep. at 38, 41,

9   44-45, 48-49, 54; H. Dep. at 47; E. Dep. at 105, 111.

10   Officer Estrada testified that he exited his vehicle and approached Mr. Liberal's vehicle with

11   his hand on his gun, "agitated," "a little pumped up," and "a little scared."  L. Dep. at 52-53, 93; H.

12   Dep. at 48, 59; E. Dep. at 114-115, 123, 135, 138, 140-141, 162, 166-167.  He ordered the occupants

13   to place their hands up and out the window, and they complied.  L. Dep. at 38-39; E. Dep.

14   at 118-119.  He then requested Mr. Liberal's driver license and registration, which were provided.

15   L. Dep. at 39, 60-61; E. Dep. at 122; Ex. 2; K. Dep., pp. 82-83.  In response to Mr. Liberal's inquiry

16   regarding why he was stopped, Officer Estrada accused him of trying to flee, which he denied.  L.

17   Dep. at 61-62; H. Dep. at 80; E. Dep. at 65-66, 123, 126-127.

18   **II.      Mr. Liberal and Mr. Martinez are handcuffed.**

19   At some point, before or after entering the parking lot, Officer Estrada had requested

20   expedited backup.  Ex. 2 to E. Dep.; K. Dep. at 65-67.  Within a few minutes, defendant Officer

21   Keegan arrived and approached Mr. Liberal's vehicle.  L. Dep. at 62; Ex. 2 to Estrada Depo; K. Dep.

22   at 68.  Mr. Martinez, in the right rear passenger seat, was using a cell phone.  L. Dep. at 61; H. Dep.

23   at 63.  Officer Estrada proceeded to the rear window, and began to yell at Mr. Martinez, insisting he

24   get off the cell phone.  L. Dep. at 63; H. Dep. at 63.  Mr. Liberal and Mr. Martinez inquired of the

25   necessity that he terminate his conversation, given that he was not involved in the stop.  L. Dep. at

26   69, 70, 73-74; H. Dep. at 63, 73, 109.

27   ///

28   ///

3

Officer Keegan, Officer Estrada, or both[3] ordered Mr. Liberal out of the vehicle.  L. Dep. at 63, 71; H. Dep. at 64.  As he was exiting, the officer(s) surprised Mr. Liberal by grabbing his left wrist, pulling him from the car, and spinning him around facing the car's rear door.  L. Dep. at 63-65, 101; H. Dep. at 64-65.  He was shoved against the vehicle, causing it to rock to the right.  L. Dep. at 65-67, 101; H. Dep., pp. 65-67.  The officer(s) then handcuffed him, and Officer Keegan escorted him to sit on the front bumper of his police car.  L. Dep. at 67-68; H. Dep. at 68; E. Dep. at 170; K. Dep., p. 90.  Officer Keegan's recollection is the handcuffing was uneventful.  K. Dep. at 84, 88-89.

Mr. Liberal heard Officer Estrada again telling Mr. Martinez to get off the telephone.  L. Dep. at 69-71.  Mr. Martinez was then removed from the vehicle, bent over the trunk of Mr. Liberal's car, and handcuffed.  *Id.*  Mr. Liberal could hear Officer Estrada and Mr. Martinez arguing about why Mr. Martinez did not get off the telephone, and he heard Officer Estrada repeatedly telling Mr. Martinez to "shut up."  L. Dep. at 70, 72-73.

Five more Menlo Park agents arrived on-scene: defendant Officers Ayres, Romero, Wheaton, and Tassio, and Sergeant Prickett.  L. Dep. at 80; E. Dep., Ex. 2; K. Dep. at 90, 99.  This was essentially the entire watch.  Ex. I to B. Decl., Dep. of Jaimee Tassio ("T. Dep.") at 53.

**III.    Officer Keegan partially Mirandizes Mr. Liberal.**

Officer Estrada spoke with Mr. Liberal, and again accused him of trying to flee, which Mr. Liberal denied.  L. Dep. at 72-73; H. Dep. at 79.  Mr. Liberal complained that this was harassment and mentioned getting a lawyer.  H. Dep. at 79, 80; K. Dep. at 96.  Mr. Liberal was next to Officer Keegan, and observed him activate a small digital recorder on his person.[4]  L. Dep. at 98, 99; K. Dep. at 96.  Officer Keegan started to Mirandize Mr. Liberal, but never finished.  L. Dep. at 98-99.  At this point, Mr. Liberal thought he was under arrest.  *Id.*

///

---

[3]    Mr. Liberal believes this contact was with Officer Keegan.  L. Dep. at 64.  Mr. Hamilton believes it was with Officer Estrada.  H. Dep. at 64-66, 97-98.  Neither officer is certain, though Officer Keegan believes he may have assisted Officer Estrada.  *Cf.* Estrada Decl., ¶ 8 (Officer Keegan cuffed Mr. Liberal), with Keegan Decl., ¶ 4 (assisted Officer Estrada in cuffing Mr. Liberal).

[4]    The approximately 15-minute recording was filed as Docket No. 50 in this matter.

1    ///

2    During Officer Keegan's recording, of which Officer Estrada was unaware, E. dep. at 154;

3    K. Dep. at 19, Officer Estrada returned to speak to Mr. Liberal:[5]

4    EE:    Here's the deal, ok?  This is the way I do business, ok.  If you would have pulled over and not tried to ditch me (*), ok, then you and I would have been

5           having a more decent conversation, ok.  But, you tried to ditch me, I get behind you, and then you start shooting off your mouth to me, and then your

6           friends are joining along.  I got to make a decision here.

7    KL:    Um.

8    EE:    Let me finish.

9    KL:    Yeah, I, that's why I (*) I thought you was done sir.

10    EE:    Don't interrupt.  I need to make, I need to make a decision here.  I'm going to decide whether I'm going to let three little punks walk all over me, and the

11           reason I call you punks is you're acting that way.  I gonna have to decide whether I'm going to let three little punks walk all over me or whether or not

12           to sit on you real fast and let you know that I'm the one in charge here, not you, ok.  You understand me?  Now, let me explain something else to you too.

13           You may be able to get away with smarting off to some of the younger cops, you're not going to do that with me and I'll explain to you why, ok.  Because,

14           since I had [sic] no desire to become  sergeant, I really don't give a rat's ass who I piss off.  I don't care about complaints.

15

16    KL:    I know you don't care I can see that.

     EE:    Ok, so, so, so, it's a lot of things in that Penal Code that I could arrest you

17           right now for if I wanted to, so if I was you, I would just keep your mouth shut, don't try to, don't try to get smart with me, and we might have a better

18           evening, you understand me?  Do you understand me?

19    KL:    Officer, it's (*)

20    EE:    Do you understand, Mike[6] I have a question for you.

21    KL:    Well, you're not understanding me, I mean.

22    EE:    Do you understand me, yes or no?

23    KL:    I do understand you, but you're not understanding me though.  Can you understand me for a second?

24

25    EE:    The only thing I know so far right now is that,

26

27    _____

5    "KL" stands for Mr. Liberal, "EE" stands for Officer Estrada, and "JK" stands for Officer Keegan.  There is no dispute regarding the authenticity or accuracy of the recording.  E. Dep. at 33; K. Dep. at 27, 98.  The parties do not explain what "(*)" signifies.

28

6    It is unknown whom "Mike" references.

KL:     That I'm trying to ditch you.

EE:     I tried to stop you and that you pulled in here with a fast (*)

KL:     How, how, how did you try to um, stop me when you was at the light, you was at the light when I make a right, Officer.  I mean.

EE:     You even said yourself that you knew I was going to stop you.

KL:     Yeah, I knew you was going to stop me, that's why I pulled over here, that's why I pulled over here.

EE:     My hearing is very good.

JK:     Into a back alley behind a bunch of parked cars?

KL:     Yeah, because my friend stays right there, that's why.

JK:     Stay right where?

KL:     Right there, he stay right on um, the next block, the next block.

EE:     You pulled in, you pulled in here pretty fast my friend, you pulled in here real fast.

KL:     Ok, and, and I saw you at the light behind that other car.

EE:     Yeah, you were trying to ditch me.

KL:     I don't think I was trying to ditch you.

EE:     Oh, I think you were.

KL:     You know like.

EE:     But if you want to keep, if you want to keep lying to me, that's fine.

KL:     No, I'm not lying to you.

Ex. A to B. Decl. at 2-4.

**IV.     Mr. Liberal is uncuffed.**

Later, during the recording, the following discussion occurred:

EE:     Because of that, that's why you're being handcuffed for security purposes, ok. Now, if I take those cuffs off, are you going to get stupid or are you going to continue being a gentleman as you have been for the last past 5 minutes.

KL:     I'm, I'm  just trying to get home Sir, that's it.

EE:     OK, alright.  I asked you a question,

KL:     That's all I'm saying.

6

EE:    I asked you a question.

KL:    I answered it correctly, right.

EE:    Ok.  Are you going to get stupid or are you going to remain a gentleman?

KL:    I'm just trying to go home Sir, that's all I'm saying.

EE:    Are you going to remain a gentleman, my question, or are you going to get stupid?

KL:    I'm going to remain a gentleman.

EE:    Thank you very much, that is my question.  Turn around.

Ex. A to B. Decl. at 8.

Officer Estrada then uncuffed Mr. Liberal.  K. Dep. at 115.  Mr. Liberal estimates he was handcuffed 25 to 30 minutes and that the entire incident lasted about 45 minutes.[7]  L. Dep. at 94. Mr. Hamilton concurs.  H. Dep. at 78.  Mr. Hamilton also testified that unlike Mr. Liberal and Mr. Martinez, who were handcuffed for a similar period of time, he said little to the officers, and was only handcuffed with his hands in front of him, for about five minutes.  *Id.* at 108.

**V.    The officers search Mr. Liberal's vehicle.**

At some point, the officers were searching around the car, making comments like "[i]t [sic] got to be here somewhere."  L. Dep. at 76-77, 80, 82.  Officer Estrada then grabbed Mr. Liberal by the arm, escorted him a few steps to his (Mr. Liberal's) vehicle, and asked if he owned it and for permission to search it.  L. Dep. at 81-83.  Mr. Liberal confirmed his ownership and consented to a search.  L. Dep. at 81.  Officers Estrada and Wheaton, and possibly Officers Tassio or Sergeant Prickett, searched the vehicle for contraband.  L. Dep. at 81, 83-84, 86; E. Dep. at 172, 193; Ex. F to B. Decl., Dep. of Barbara Ayres ("A. Dep.") at 83; W. Dep. at 96-99.  A lawfully possessed unloaded pellet handgun was all they found.  L. Dep. at 81, 84, 86, 94; E. Dep. at 172, R. Dep. at 22-23.

The supervisor on scene, Sergeant Prickett, had the following one-minute conversation with Mr. Liberal, at around eleven-and-a-half minutes into Officer Keegan's recording:[8]

---

[7]    Dispatch logs show the incident lasted 28 minutes.  Ex. 2 to E. Dep.

[8]    "PO" stands for Sergeant Prickett.  "[?]" indicates passages unclear due to other speakers.

PO:     I mean, I even came after the fact and, and at least it's just being really ignorant.

KL:     You know . . .

PO:     You know, if nothing else . . .

KL:     I mean, it's  . . .

PO:     . . . it's just being damn right ignorant.

KL:     It looks, it looks bad, like when you pull in [?] here

PO:     When you stop, stop on the road, because if this officer is not sure what's goin' on, and you do something stupid once he comes up on you, it's very easy to get shot, you know, 'cause his safety is in jeopardy, really, especially, you know, doing the whole routine back here.  I mean just [?] yourself out.

KL:     You know, you know like, [?] I been in situations like that before [?] and not havin' a life . . . .

Docket No. 50.[9]

## VI.     Mr. Liberal passes two nystagmus tests and is released.

Mr. Liberal had been drinking earlier that evening, and after twelve minutes into Officer Keegan's recording, Officer Estrada performed two nystagmus tests on Mr. Liberal, about a minute apart, both of which showed he was not under the influence.  L. Dep. at 28, 76; E. Dep. at 172.[10]

Mr. Liberal testified he and his friends were then lined up, and Officer Estrada advised Mr. Liberal that he wished he were drunk so he could arrest him.  L. Dep. at 87.  He told Mr. Martinez that he could be arrested for being drunk in public, which Mr. Martinez questioned given that Officer Estrada had removed him from the car.  *Id.*  Officer Estrada advised them that had they made a wrong move, he would have "busted a cap" in them right between the eyes, and that he and his partner liked to go to "night target practice."[11]  L. Dep. at 87-88.  Still having not been told

///

---

[9]      It is unclear from the recording and other evidence whether this conversation occurred before or after the pellet gun was located.  Docket No. 50.

[10]      The recording ends at this point.  Docket No. 50.

[11]      Mr. Hamilton's memory is the comment was that if one of them had wielded the pellet gun, they might have been shot, and that it was made not by Officer Estrada, but by a taller, white haired officer.  H. Dep. at 83.

1    ///

2    ///

3    why he was stopped,[12] Mr. Liberal and his friends were allowed to leave.  L. Dep. at 93, 98; E. Dep.

4    at 172.

5    **VII.    Procedural Developments**

6          The day after the incident, Mr. Liberal made a complaint at the police station, but never

7    heard from the department.  L. Dep. at 113-116.[13]  On September 5, 2008, Mr. Liberal filed this suit

8    under 42 U.S.C. § 1983, various California torts, and section 52.1 of the California Civil Code.  *See*

9    Docket No. 1.  During discovery, Mr. Liberal testified that although he was not physically injured,

10   he suffered emotional distress that caused him problems with concentration at his job, as well as

11   problems sleeping.  L. Dep. at 104-05, 107-108; L. Interrogs. at 5, Interrog. 9.  Because he could not

12   afford it, Mr. Liberal did not seek treatment for his psychological injuries despite his desire to do so.

13   L. Dep. at 107, 109.  Although he alleged physical pain in his interrogatories, L. Interrogs. at 5,

14   Interrog. 9, he denied any pain in his deposition, L. Dep. at 108.  On July 10, 2008, defendants filed

15   their Motion for Summary Judgment or in the Alternative for Summary Adjudication (the "Motion")

16   claiming qualified immunity, no evidence of a *Monell* violation, and California immunities or

17   privileges.  *See* Docket No. 38.

18                              **LEGAL STANDARD**

19          Summary judgment is appropriate if no genuine issue of material fact exists and the moving

20   party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

21   477 U.S. 317, 322-23 (1986).  The party moving for summary judgment must demonstrate there are

22   no genuine issues of material fact.  *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035

23   (9th Cir. 2007).  An issue is "genuine" if the evidence is such a reasonable jury could return a

24   verdict for the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera*

25

26   ──────────────

     [12]      Officer Estrada has testified that he told Mr. Liberal he was stopped for tinted windows.  E.
27   Dep. at 167-168, 198.

28   [13]      The department conducted an internal investigation, *see* E. Dep. at 24, 28, but the parties do
     not indicate the result, if any.

1    *v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  An issue is "material" if its resolution

2    could affect an action's outcome.  *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

3         In responding to a properly supported summary judgment motion, the non-movant cannot

4    merely rely on their pleadings, but must present specific and supported material facts, of significant

5    probative value, to preclude summary judgment.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*

6    *Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th

7    Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001).  In determining

8    whether a genuine issue of material fact exists, the Court views the evidence and draws inferences in

9    the light most favorable to the non-movant.  *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of*

10   *the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564,

11   568 (9th Cir. 2004).

12                                      **ANALYSIS**

13   **I.    Qualified Immunity**

14        Mr. Liberal alleges that the individual defendants[14] violated his civil rights under the Fourth,

15   Fifth, and Fourteenth Amendments.  Docket No. 26 (First Am. Compl. ("FAC")) ¶ 20.  Plaintiff has

16   sued under 42 U.S.C. § 1983, which states:

17             Every person who, under color of any statute, ordinance, regulation, custom,

18        or usage, of any State . . . subjects, or causes to be subjected, any citizen of the

19        United States . . . to the deprivation of any rights, privileges, or immunities secured

20        by the Constitution and laws, shall be liable to the party injured in an action at law,

21        suit in equity, or other proper proceeding for redress . . . .

22   ───────────────────

23   [14]    In the caption of his Amended Complaint, Mr. Liberal named the individual defendants in
     their individual and official capacities.  *See* Docket No. 26 at 1.  In his first claim, however, he sued
24   "defendants OFFICERS" under 42 U.S.C. § 1983, for the constitutional violations addressed here in
     part I, without specifying in which capacities he was suing them.  *See id.* at 5.  A suit under § 1983
25   against the individual defendants in their official capacities, is a suit against the City.  *See Hafer v .*
     *Melo*, 502 U.S. 21, 25-27 (1991).  Mr. Liberal may only sue the City, however, by raising a claim
26   under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which he did in his second
     claim, which he brought against only the City, and no other defendants.  *See* Docket No. 26 at 6-7.
27   The Court addresses this second claim in part II, *infra*.  Because Mr. Liberal may only sue the
     individual defendants in their official capacities, under *Monell*, the Court GRANTS summary
28   adjudication for these defendants on Mr. Liberal's § 1983 claims brought against the individual
     defendants but not under *Monell*.

Defendant officers assert qualified immunity.  Mem. at 6-12.  Qualified immunity is not merely a defense to liability, but rather a bar to suit, to avoid the "burdens of litigation."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  Ideally, a court determines whether it exists or not, as early as possible in the litigation.  *Id.* at 201.  This determination proceeds in three steps.  *Id.*  First, the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.*  If not, the analysis ends.  *Id.*  If so, then "the next, sequential step is to ask whether the right was clearly established."  *Id.*  If not, then immunity exists.  *Id.*  "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."  *Id.* at 205; *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (discussing *Saucier* test).

### A.      Search and Seizure Claims

Mr. Liberal's asserts the officers violated his right to be free of unreasonable search and seizures under the Fourth and Fourteenth Amendments.  FAC ¶ 20.a.  The Fourth Amendment states, "The right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const., amend. IV.  The Fourteenth Amendment extends the Fourth Amendment's reasonableness requirement to the states and their subdivisions.  *See Delaware v. Prouse*, 440 U.S. 649, 653 (1979); *Mapp v Ohio*, 367 U.S. 644, 650, 655 (1961).

### 1.      The Traffic Stop

The Court DENIES summary adjudication for Officer Estrada, but GRANTS summary adjudication for all other individual defendants, with respect to Mr. Liberal's search and seizure claim premised on his detention for being stopped for having tinted front side windows.  A traffic stop constitutes a "seizure" under the Fourth Amendment, and thus must be "reasonable."  *Whren v. United States*, 517 U.S. 808, 809-10 (1996); *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 946 (9th Cir. 2003).  A traffic stop is reasonable if based on probable cause to believe illegal activity has occurred or is about to occur.  *Whren*, 517 U.S. at 810.  It is also reasonable if based on a reasonable suspicion of illegal activity.  *Prouse*, 440 U.S. at 663; *see also U.S. v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005).

Applying the probable cause and reasonable suspicion standards in a qualified immunity

analysis, the Court first asks, "[t]aken in the light most favorable to [Mr. Liberal], do the facts alleged show [Officer Estrada's] conduct violated a constitutional right?"  *Saucier*, 533 U.S. at 201. Officer Estrada claims he stopped Mr. Liberal, because his front driver's side window was tinted in violation of sections 26708 and 26708.5 of the California Vehicle Code.  Mr. Liberal and other witnesses, however, have testified not only were the front windows not tinted, they were rolled down.  Although this creates a genuine issue of material fact, taking this evidence in a light most favorable to Mr. Liberal, as *Saucier* requires, no reasonable jury could find that Officer Estrada had probable cause or reasonable suspicion to stop him.  Thus, doing so under these facts violated his constitutional right to be free of unreasonable searches and seizures.

"[T]he next, sequential step is to ask whether the right [to be free from illegal stops] was clearly established."  *Saucier*, 533 U.S. at 201.  "Under *settled* Fourth Amendment law, a traffic stop constitutes a seizure, and an officer must have reasonable suspicion before detaining a motorist." *Bingham*, 341 F.3d at 946 (emphasis added).  The right was clearly established.

Proceeding to the third *Saucier* step, "[i]f the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."  *Saucier*, 533 U.S. at 205. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he confronted."  *Id.* at 202. This is because "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law[.]' "  *Id.* (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Officer Estrada does not argue mistake as to what the law required.  Instead, he argues that his mistake of fact was reasonable.  Reply at 2-3; E. Dep. at 102-03.  Mr. Liberal disagrees as Officer Estrada testified he could not see Mr. Liberal due to the tinted driver's window, Opp'n at 15-17, E. Decl., ¶ 5, but that he would have seen him had the front driver's window been down, Opp'n at 15-17, H. Dep. at 77, 107-08;  E. Dep. at 83-85.  Further, Mr. Liberal notes he and Mr. Hamilton saw Officer Estrada make eye contact with Mr. Liberal.  Opp'n at 15-17.

Construing these facts in a light most favorable to him, the Court agrees with Mr. Liberal that Officer Estrada is not entitled to qualified immunity on the basis of a reasonable mistake.  As

1    such, he is not entitled to qualified immunity with respect to Mr. Liberal's search and seizure claim

2    for being stopped for having a tinted front side window.  The Court thus DENIES summary

3    adjudication for Officer Estrada with respect to this claim.  As he was the only officer that stopped

4    Mr. Liberal, however, the Court GRANTS summary adjudication for all other individual defendants.

5                    **2.    The Vehicle Search**

6          The Court DENIES summary adjudication as to Officers Estrada, Wheaton, and Tassio, and

7    Sergeant Prickett, but GRANTS it for all other individual defendants, with respect to Mr. Liberal's

8    search and seizure claim for the search of his vehicle.  Mr. Liberal asserts there was no apparent

9    justification for this search.  Opp'n at 18:16-17.  Defendants have chosen not to address this issue in

10   their Motion or their Reply, leaving Mr. Liberal's assertion undisputed.[15]  Nonetheless, the Court

11   notes that for purposes of a Fourth Amendment analysis, the Ninth Circuit has:

12         identified five factors, none of which is individually dispositive, to determine if a

13         consent to search was voluntarily given: "(1) whether defendant was in custody;

14         (2) whether the arresting officers had their guns drawn; (3) whether *Miranda*

15         warnings were given; (4) whether the defendant was notified that [he] had a right not

16         to consent; and (5) whether the defendant had been told a search warrant could be

17         obtained."  *United States v. Soriano*, 361 F.3d 494, 502 (9th Cir. 2004) (internal

18         quotation marks omitted).

19   *U.S. v. Washington*, 490 F.3d 765, 775 (9th Cir. 2007).

20         The undisputed facts show when Officer Estrada requested Mr. Liberal's consent to search

21   his vehicle, Mr. Liberal had been partially Mirandized, detained for at least 15 minutes, cuffed for at

22   least 10 of them, and was surrounded by seven police officers, some of whom were actively

23   searching the area immediately around his vehicle.  The undisputed facts also show that Officer

24   Estrada grabbed Mr. Liberal by the arm, while he was sitting on Officer's Keegan's bumper, just to

25   walk him a few steps to have him "identify" his vehicle as his and provide consent to search it.

26

27   [15]    Generally, the Court deems a movant's failure to address an issue as grounds to deny relief
      on that issue.  The Court declines to do so here, however, given that Mr. Liberal has presented no
28   evidence that anyone other than Officers Estrada, Wheaton, Tassio, or Sergeant Prickett were
      involved in the vehicle search.

Under the *Washington* factors:  (1) Mr. Liberal was in custody, as he was "seized, and a reasonable person [in his place] would not have felt free to terminate the encounter and leave[,]" *Washington*, 490 F.3d at 775;  (2) the officers did not have their guns drawn; (3) no *Miranda* warning was given, as Officer Keegan's aborted attempt does not qualify as one; (4) Mr. Liberal was not notified he could refuse; and (5) Mr. Liberal was not advised a search warrant could be obtained. Given these factors, and the time of morning, *id.*, the fact the officers had control of Mr. Liberal's vehicle, *id.*, and their number, *id.,* a reasonable jury could find that Mr. Liberal did not voluntarily consent to a search of his vehicle.

Thus, under the first *Saucier* prong, construing these facts in Mr. Liberal's favor, the vehicle search was non-consensual, in violation of his Fourth Amendment right against unreasonable searches.  This is especially so, where construing the tinted window facts in his favor, there was no probable cause or reasonable suspicion underlying the stop giving rise to the search.  Under the second prong, the Court finds the *Washington* standard is well settled: The five factors cited in *Washington*, in 2007, were drawn from *Soriano*, issued in 2004, which drew them from *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1989), which distilled them from "case law to create the five factors now *widely used*."  *Soriano*, 361 F.3d at 502 (emphasis added).  Turning to *Saucier*'s third prong, the Court finds "it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted."  *Saucier*, 533 U.S. at 202.  That is, no reasonable officer could have believed, under the facts construed in Mr. Liberal's favor, that there was a lawful basis for the stop giving rise to the search, or that he had consented to one.  Thus, the Court DENIES summary adjudication for Officers Estrada, Wheaton, and Tassio, and Sergeant Prickett, with respect to Mr. Liberal's search and seizure claim for the search of his vehicle.  As the parties identify no other officers involved in the search,[16] however, the Court GRANTS summary adjudication for all other individual defendants, with respect to this claim.

---

[16]    The parties did not address whether the other officers were involved in the search under the integral participant doctrine, *see Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004), nor did they address whether the search participants other than Officer Estrada were entitled to qualified immunity for relying on another officer's instructions or commands, *see Gordon v. Degelmann*, 29 F.3d 295, 300 (7th Cir. 1994).

1 ///

2 ///

3   **3. The Length of the Detention**

4   The Court DENIES summary adjudication for all individual defendants for Mr. Liberal's

5 search and seizure claim with respect to the length of his detention.  Mr. Liberal asserts his detention

6 was unconstitutionally long.  Opp'n at 18.  The Supreme Court has held, "a seizure that is lawful at

7 its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes

8 interests protected by the Constitution."  *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure

9 that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if

10 it is prolonged beyond the time reasonably required to complete that mission.")  This is a facts and

11 circumstances test and the question turns on whether the officers "diligently pursued a means of

12 investigation that was likely to confirm or dispel their suspicions quickly, during which time it was

13 necessary to detain the defendant."  *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

14   Mr. Liberal alleges defendants kept him in handcuffs, for a period he estimates at 25 to

15 30 minutes, not as part of an investigative stop, but for an "attitude adjustment."  Opp'n at 18.  He

16 also notes Officer Estrada had checked his license with dispatch, 36 seconds after the stop.  *Id.*

17 Defendants do not dispute this issue in their Motion or their Reply.

18   Under *Saucier*'s first prong, construing the facts in a light most favorable to Mr. Liberal, he

19 was detained for about 30 minutes after being stopped without probable cause or reasonable

20 suspicion.  The Court cannot find as a matter of law that the individual defendants "diligently

21 pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during

22 which time it was necessary to detain the defendant."  *See Sharpe*, 470 U.S. at 686.  There is no

23 argument proffered under *Saucier*'s second prong that *Caballes*' 2005 holding is unsettled.  Finally,

24 under *Saucier*'s third prong, construing the facts in a light most favorable to Mr. Liberal, the Court

25 cannot find as a matter of law that the individual defendants were not on notice that their 30-minute

26 detention was clearly unlawful.  *See Saucier*, 533 U.S. at 205.  The Court thus DENIES summary

27 adjudication for all individual defendants with respect to Mr. Liberal's search and seizure claim

28 premised upon the length of his detention.

1    ///

2    ///

3    **B.      Excessive Force**

4    The Court DENIES summary adjudication for Officers Estrada and Keegan, but GRANTS

5    summary adjudication for all other individual defendants, with respect to Mr. Liberal's excessive

6    force claim under the Fourth and Fourteenth Amendments.  Mr. Liberal asserts defendants used

7    excessive force in violation of these amendments.  FAC ¶ 20.c; Opp'n at 19-20.

8        The Fourth Amendment requires police officers making an arrest to use only

9        an amount of force that is objectively reasonable in light of the circumstances facing

10       them.  *Tennessee v. Garner*, 471 U.S. 1, 7-8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

11       Neither tackling nor punching a suspect to make an arrest necessarily constitutes

12       excessive force.  *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d

13       443 (1989) (" 'Not every push or shove, even if it may seem unnecessary in the peace

14       of the judge's chambers,' . . . violates the Fourth Amendment") (*quoting Johnson v.*

15       *Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  But "even where some force is justified,

16       the amount actually used may be excessive."  *Santos v. Gates*, 287 F.3d 846, 853 (9th

17       Cir. 2002).  The question in all cases is whether the use of force was "objectively

18       reasonable in light of the facts and circumstances confronting" the arresting officers.

19       *Graham*, 490 U.S. at 397, 109 S.Ct. 1865 (internal quotation marks omitted).

20   *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

21       To determine whether a specific use of force was reasonable, we must balance

22       "the nature and quality of the intrusion on the individual's Fourth Amendment

23       interests against the countervailing government interests at stake."  [*Graham*, 490

24       U.S. ]at 396, 109 S.Ct. 1865 (internal quotation marks omitted).  Relevant factors to

25       this inquiry include, but are not limited to, "the severity of the crime at issue, whether

26       the suspect poses an immediate threat to the safety of the officers or others, and

27       whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*; *see*

28       *also Forrester v. City of San Diego*, 25 F.3d 804, 806 n. 2 (9th Cir.1994).  When

1    appropriate, our reasonableness determination must also make "allowance for the fact

2    that police officers are often forced to make split-second judgments-in circumstances

3    that are tense, uncertain, and rapidly evolving-about the amount of force that is

4    necessary in a particular situation." *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865.

5    *Blankenhorn*, 485 F.3d at 477.

6         Defendants argue their use of force was objectively reasonable under the circumstances.

7    Mem. at 10-12, Reply at 6-9.  They quote from *Alexander v. County of Los Angeles*, 64 F.3d 1315,

8    1320 (9th Cir. 1995), that "[i]t is well settled that when an officer reasonably believes force is

9    necessary to protect his own safety or the safety of the public, measures used to restrain individuals,

10   such as stopping them at gunpoint and handcuffing them, are reasonable."  Defendants note that

11   *Alexander* held such actions do not convert a detention stop into an arrest.  *Id.*  They also argue the

12   facts show Mr. Liberal attempted to evade Officer Estrada by zig-zagging into a dark parking lot,

13   then tried to hide behind a building with his lights off, next to a dumpster.  *Id.*  Backup officers

14   responding to an expedited call, entered this darkened area, and found the three suspects hiding in a

15   car next to this dumpster.  *See id.*  Defendants argue it was thus reasonable for officers to have the

16   suspects exit for handcuffing, prior to a weapons search.  *Id.*  They also note that Mr. Liberal never

17   said he was in pain or discomfort, nor did he subsequently seek medical treatment.  *Id.*

18        Mr. Liberal counters he was compliant at all times, never resisted, and was only stopped for

19   having tinted windows.  Opp'n at 18-19.

20        The facts taken in a light most favorable to Mr. Liberal show that his front side windows

21   were *untinted* and in an attempt to effect an unlawful detention, Officer Estrada entered the Foster's

22   Freeze parking lot at high speed.  He then turned his spotlight on Mr. Liberal's vehicle.  Without

23   waiting for backup, he approached the vehicle, hand on his weapon, and had the occupants put their

24   hands out the windows.  He then verified Mr. Liberal's driver's license with dispatch.  All of this

25   transpired within 36 seconds and well before backup arrived.

26        When Officer Keegan arrived a few minutes later, he and Officer Estrada became irritated

27   because Mr. Martinez would not stop talking on his cell phone.  It was only when Mr. Liberal and

28   Mr. Martinez questioned why the officers were directing their attention to Mr. Martinez that the

17

officers asked Mr. Liberal to exit, and handcuffed him by shoving him against his car.  Mr. Martinez was also removed and handcuffed by being shoved over the vehicle's trunk.  Both were cuffed for 10 to 25 minutes.  In contrast, Mr. Hamilton, *who spoke little to the officers*, was handcuffed with his hands in front of him, for about *five minutes*.

Later, Officer Keegan advised another officer that the suspects were "mouthing off a bit" when he arrived.  Docket No. 50.  Officer Estrada's statements to the handcuffed Mr. Liberal, evidence his state of mind, such as, "you tried to ditch me, I get behind you, and then you start shooting off your mouth to me, and then your friends are joining along.  I got to make a decision here."  Ex. A to B. Decl. at 2-4.  He then says:

> I'm going to decide whether I'm going to let three little punks walk all over me . . . .  I gonna have to decide whether I'm going to let three little punks walk all over me or whether or not to sit on you real fast and let you know that I'm the one in charge here, not you, ok. . . .  You may be able to get away with smarting off to some of the younger cops, you're not going to do that with me and I'll explain to you why, ok.  Because, since I had [sic] no desire to become sergeant, I really don't give a rat's ass who I piss off.  I don't care about complaints.

Ex. A to B. Decl. at 2-4.

Under *Saucier*'s first prong, the force applied was excessive.  While some of the evidence supports defendants' contention that they had legitimate safety and security concerns, the facts construed in Mr. Liberal's favor, fail to show any basis for the initial stop, the handcuffing, or Officer Estrada's remarks directed to Mr. Liberal.  Further, in addressing these safety concerns, defendants fail to explain the substantially disparate use of the handcuffs on the "mouthy" suspects.  Moreover, although defendants bear the burden of proof for their affirmative defense, they have not established the length of time Mr. Liberal remained handcuffed.  *See Sharpe*, 470 U.S. at 686.  Thus, the Court cannot determine if the force used was reasonably proportionate to any perceived threat, or simply used as an "attitude adjustment," as Mr. Liberal suggests.  Defendants' reliance on *Alexander* is problematic, as it holds handcuffs may be proper where an officer has *actual information* a suspect is armed and/or violent, 64 F.3d at 1320, which was not the case here.

18

1    Under *Saucier*'s second prong, the Court finds the contours of the use of force for traffic

2    stops was well established.  And, under its third prong, there is no mistake of law which immunizes

3    an officer for applying force to a suspect for "smarting off," nor to one detained without probable

4    cause or reasonable suspicion.  Thus, with respect to Mr. Liberal's excessive force claim under the

5    Fourth and Fourteenth Amendments, the Court DENIES summary adjudication for Officers Estrada

6    and Keegan, but GRANTS summary adjudication for all other individual defendants, who did not

7    participate in cuffing him.

8          **D.    Equal Protection**

9          The Court GRANTS summary adjudication for all individual defendants for Mr. Liberal's

10   equal protection claim.  Mr. Liberal claims the individual defendants violated his right to equal

11   protection under the Fourteenth Amendment, based on his race.  FAC ¶ 20.d; Opp'n at 21-22.

12   Section one of the Fourteenth Amendment states in part, "No State shall  . . . deny to any person

13   within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "[T]o

14   succeed on [an] equal protection claim, [a plaintiff] must prove [the officer] 'acted in a

15   discriminatory manner and that the discrimination was intentional.' "  *Bingham*, 341 F.3d at 949

16   (*quoting Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000)).  That is, a

17   plaintiff " 'must "produce evidence sufficient to permit a reasonable trier of fact to find by a

18   preponderance of the evidence that [the] decision . . . was racially motivated." ' "  *Bingham*, 341 F.3d

19   at 949 (*quoting Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 754 (9th Cir. 2001)

20   (*quoting FDIC v. Henderson*, 940 F.2d 465, 473 (9th Cir. 1991)) (alterations in original));

21   *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995) ("[A] long line of Supreme Court cases make

22   clear that the Equal Protection Clause requires proof of discriminatory intent or motive[.]").

23         Defendants argue Mr. Liberal has presented no evidence of any racial intent or motive on the

24   part of any individual defendant.  Mem. at 13-15.  Mr. Liberal argues he was stopped because he is

25   African American.  L. Dep. at 119.  He testified, however, no individual defendants made any racial

26   remarks.  *Id.* at 119-20.  He did present evidence that Officer Romero believed that when Sergeant

27   Prickett told Mr. Liberal it was "ignorant" to stop behind a darkened building, the term "ignorant"

28   could be construed as race-based.  A. Dep. at 29-30.  And, he presented evidence that certain

1    officers

2    ///

3    ///

4    believed Sergeant Prickett was a racist and had been named in employment discrimination suits.[17]

5    E. Dep. at 13-17, 36-37, 149-151, 153; K. Dep. at 122-127; Dep. of Ronald Prickett ("P. Dep.")

6    at 11, 15-18, 22-25, 28-30, 54-59, 62-65; T. Dep. at 81.

7         In turn, Officer Estrada testified he stops mostly European Americans, and only 3 of 79

8    persons he arrested in 2005 for drunk driving were African American.  Mem. at 14.  Further, he sued

9    the Menlo Park Police Department in 1992 for racially discriminatory personnel practices, though he

10   recently left the department due to favoritism, rather than racism.  E. Dep. at 38-48.  And, the

11   department presented statistics gathered for its anti-bias program set up with the ACLU, which

12   showed no racial profiling in stops, which conduct is expressly barred by its policy.  Mem. at 13;

13   Docket No. 41.

14        The Court finds that construing these facts in a light most favorable to Mr. Liberal, no

15   reasonable jury could find he was stopped on the basis of his race.  The *only* evidence he presents

16   that any individual defendant *ever* acted in a racially discriminatory manner, is that Sergeant Prickett

17   was ostensibly previously named in employment discrimination suits.  Mr. Liberal, however, never

18   connects this fact to his traffic stop.[18]  In *Bingham*, the Ninth Circuit held that evidence that an

19   officer was European American, that a motorist was African American, and that they disagreed as to

20   the reasonableness of a traffic stop, would not *by itself* avoid summary judgment on an equal

21   protection claim.  *Bingham*, 341 F.3d at 949-50.  That is essentially all Mr. Liberal has here.  Under

22   the first *Saucier* prong, the evidence construed in Mr. Liberal's favor shows no constitutional

23   violation.  Thus, the Court GRANTS summary adjudication for all individual defendants with

24   respect to Mr. Liberal's equal protection claim.

25   _____

26   [17]     The Court notes the evidence regarding these prior litigations is suspiciously lacking in court
     records or statements by persons with direct knowledge.

27   [18]     As for Prickett's use of the term "ignorant," the Court reviewed this portion of Keegan's
28   recording, transcribed in part V of the Background section, and found he spoke in an apparently
     concerned and explanatory tone, and that no reasonable jury could construe it as race-based.

1        **E.      Fifth Amendment**

2            Mr. Liberal claims the individual defendants violated his Fifth Amendment rights to due

3    process and to be free from excessive force.  FAC ¶ 20.c.  The due process clause of the Fifth

4    Amendment states in part, "No person shall . . . be deprived of life, liberty, or property, without due

5    process of law[.]"  U.S. Const. amend. V, cl. 3.  This clause, however, only applies to federal actors,

6    not state ones.  *Betts v. Brady*, 316 U.S. 455, 462 (1942) ("Due process of law is secured against

7    invasion by the federal Government by the Fifth Amendment and is safeguarded against state action

8    in identical words by the Fourteenth."), *overruled on other grounds by Gideon v. Wainwright*, 372

9    U.S. 335 (1963); *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *Warren v. Gov't Nat'l

10   Mortg. Ass'n*, 611 F.2d 1229, 1232 (8th Cir. 1980); *see Geneva Towers Tenants Org. v. Federated

11   Mortgage Investors*, 504 F.2d 483, 487 (9th Cir. 1974); *Alexander v. City and County of Honolulu*,

12   545 F.Supp.2d 1122, 1128, 1132-33 (D. Haw. 2008) (no claim for alleged beating by police).  Thus,

13   the Court GRANTS summary adjudication for all individual defendants on this claims.

14   **II.     *Monell v. Department of Social Services*, 436 U.S. 658 (1978)**

15           The Court GRANTS summary adjudication for the city of Menlo Park (the "City") on

16   Mr. Liberal's claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

17   Mr. Liberal asserts the City has a practice of racial profiling, detentions, excessive force, illegal

18   searches and seizures, threats, harassment, and abuse, targeting African Americans.  FAC ¶ 23.  He

19   also asserts the City has a practice of excessive force, illegal searches and seizures, threats,

20   harassment, and abuse, in general.  *Id.*

21           A public entity is only liable under 42 U.S.C. § 1983 where it has a *policy, custom, or

22   practice* that violates the constitutional rights of an individual.  *Monell*, 436 U.S. at 691.  It bears no

23   vicarious liability for the acts or omissions of its employees.  *Id.*  A plaintiff may establish *Monell*

24   liability by showing a constitutional tort resulted either from actions or inactions of an entities'

25   agents, taken pursuant to its policies, customs, or practices.  *Lee v. City of Los Angeles*, 250 F.3d

26   668, 681 (9th Cir. 2001).  In the latter case, a plaintiff must show:

27           (1) they were deprived of their constitutional rights by defendants and their

28           employees acting under color of state law; (2) that the defendants have customs or

                                              21

1      policies which

2  ///

3  ///

4  ///

5      " 'amount[ ] to deliberate indifference' " to their constitutional rights; and (3) that

6      these policies are the " 'moving force behind the constitutional violation[s].' "

7  *Id.* at 681-82 (*quoting Oviatt v. Pearce*, 954 F.2d 1470, 1473, 1477 (9th Cir. 1992) (*quoting City of*

8  *Canton v. Harris*, 489 U.S. 378, 389-91 (1989))).

9      The only evidence Mr. Liberal presents on this issue is that Officer Estrada testified the

10 department "criticized" him for his demeanor in connection with traffic stops, because five or six

11 times, over a ten-year period, drivers had complained that he had asked them if they had been

12 drinking, sometimes twice in the same stop.  E. Dep. at 74-75.  He said he was cautioned some

13 people might find such questions insulting.[19]  *Id.*

14     Mr. Liberal has not met his burden.  He fails to provide any specifics, or tie any of several

15 scattered events which transpired over a ten-year service period, to any action or inaction taken

16 pursuant to any of the City's alleged policies, practices, or customs, as related to his traffic stop, the

17 search of his vehicle, his handcuffing, or the length of his detention.  *See* Opp'n at 22.  In responding

18 to a properly supported summary judgment motion, a non-movant must present specific and

19 supported material facts, of significant probative value.  *See Matsushita*, 475 U.S. at 586 n.11.

20 Mr. Liberal has failed to do this.  The Court GRANTS summary adjudication for the City, with

21 respect to Mr. Liberal's *Monell* claims.

22 **III.    California Claims**

23     **A.    The Individual Defendants**

24     Defendants argue Mr. Liberal's state law claims are barred by certain immunities and/or

25

26 ───────────────
[19]     In his *Monell* analysis, Mr. Liberal does not analyze Officer Estrada's exchanges with him
27 nor the alleged "target practice" lecture.  In regards to the latter, the Court notes, Mr. Hamilton fails
   to support Mr. Liberal's version.  Regardless, Mr. Liberal has not analyzed these topics, and has
28 failed to connect them to any alleged deprivation of his civil rights, and, more importantly, to any of
   the City's policies, practices, customs.

1  privileges, under section 820 of the California Government Code.[20]

2  **1.      Discretionary Immunity, Section 820.2**

3  Defendants argue they have discretionary immunity under section 820.2 of the Government

4  Code.  Mem. at 16.  This section states, "[e]xcept as otherwise provided by statute, a public

5  employee is not liable for an injury resulting from his [or her] act or omission where the act or

6  omission was the result of the exercise of the discretion vested in him [or her], whether or not such

7  discretion be abused."  Cal. Gov. Code § 820.2; *Barner v. Leeds*, 24 Cal.4th 676, 683, 13 P.3d 704

8  (2000).  "[N]ot all acts requiring a public employee to choose among alternatives entail the use of

9  'discretion' within the meaning of section 820.2."  *Id.* at 684.  Immunity is reserved for basic policy

10 decisions which have been expressly committed to coordinate branches of government, such that

11 judicial interference therein would be "unseemingly."  *Id.* at 685.  "There is no basis for immunizing

12 lower level decisions that merely implement a basic policy already formulated."  *Id.*  "In

13 determining whether an act of a public employee is discretionary under section 820.2, we have

14 distinguished between the employee's operational and policy decisions."  *Id.*

15 Mr. Liberal argues discretionary immunity does not apply.  Opp'n at 11.  The Court agrees

16 with Mr. Liberal.  Defendants cite *Sparks v. City of Compton*, 64 Cal.App.3d 592, 596, 134 Cal.Rptr.

17 684 (1976) and *Michenfelder v. City of Torrance*, 28 Cal.App.3d 202, 206-07, 104 Cal.Rptr. 501

18 (1972), for the principle that an officer's decision whether or not to make an arrest or stop is

19 discretionary.  Defendants are correct, but as *Sparks* holds, the immunity only extends to the

20 *threshold* decision to stop or arrest, but not to negligence "in the execution of the act *following* this

21 decision[.]"  *Sparks*, 65 Cal.App.3d at 596 (emphasis added); *see also Barner*, 24 Cal.4th at 686

22 ("[O]nce the employee undertakes to render . . . services, he or she is not immune for the negligent

23 performance of professional duties that do not amount to policy or planning decisions.")

24

25 ───────────────

[20]  This section states:

26  (a) Except as otherwise provided by statute (including Section 820.2), a public
employee is liable for injury caused by his act or omission to the same extent as a

27  private person.
(b) The liability of a public employee established by this part (commencing

28  with Section 814) is subject to any defenses that would be available to the public
employee if he were a private person.

1    Given the material differences in the versions of facts before the Court, it would be difficult

2    for the Court to find as a matter of law, as defendants request, that Officer Estrada had discretionary

3    immunity to stop Mr. Liberal without probable cause or reasonable suspicion.  Further, even were

4    the Court to find that discretionary immunity applied to Officer Estrada's *initial* decision to stop,

5    which the Court does not, the authorities supplied by defendants demonstrate he nevertheless lacked

6    discretionary immunity for any of his *subsequent conduct*.[21]  The Court DENIES summary

7    adjudication for the individual defendants on Mr. Liberal's state claims, to the extent premised on an

8    assertion of discretionary immunity under section 820.2.

9                    **2.      Due Care Immunity, Section 820.4**

10    Defendants argue they are immune under section 820.4 of the Government Code.  Mem.

11    at 16.  This section states, "A public employee is not liable for his act or omission, exercising due

12    care, in the execution or enforcement of any law.  Nothing in this section exonerates a public

13    employee from liability for false arrest or false imprisonment."  Gov. Code § 820.4.  Defendants

14    argue they acted with due care.  Mem. at 16.  Mr. Liberal notes this section expressly does not apply

15    to false arrest or imprisonment.  Opp'n at 24.  The Court notes this section also does not cover the

16    use of excessive (unreasonable) force.  *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir.

17    2002).

18    The only claims before the Court that turn on "due care" are negligence and negligent

19    infliction of emotional distress ("NIED").  There is a genuine issue of material fact, however, as to

20    whether defendants exercised due care.  When the evidence is construed in Mr. Liberal's favor, it

21    shows Officer Estrada stopped him *without probable cause or suspicion*; Officers Estrada and

22    Keegan handcuffed him; Officers Estrada, Wheaton, Tassio, and Sergeant Prickett searched his car

23    without lawful consent; and, all of the individual defendants detained him for 30 minutes.  As such,

24    summary adjudication on Mr. Liberal's negligence and NIED claims is DENIED as to these

25    defendants and these actions.  Summary adjudication is GRANTED for all other individual

26    defendants.  Finally, as the Court has found that the individual defendants' actions were not racially

27    ───────────────

28    [21]    Further, the Court notes that discretionary immunity does not cover the use of excessive force.  *Scruggs v. Haynes*, 252 Cal.App.2d 256, 60 Cal.Rptr. 355 (1967).

1   discriminatory, summary adjudication is GRANTED for all the individual defendants on these

2   claims, as to this issue.

3   ///

4   ///

5   **3.    Arrest on Probable Cause by a Peace Officer, Penal Code § 847(b)(1)**

6   Defendants assert they are immune under section 847(b)(1) of the California Penal Code,

7   Mem. at 16, which provides immunity for "any peace officer . . . acting within the scope of his or

8   her authority, for false arrest or false imprisonment *arising out of any arrest*" if "[t]he arrest was

9   lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was

10  lawful."  Cal. Penal Code § 847(b)(1) (emphasis added).[22]  For support, defendants point to *Dawkins*

11  *v. City of Los Angeles*, 22 Cal.3d 126, 148 Cal.Rptr. 857 (1978).  Mem. at 16.  *Dawkins*, however,

12  discusses the constitutional dimensions of a detention under the Fourth Amendment, not section

13  847(b).  *See* 22 Cal.2d at 133.  The Court notes that none of the parties address whether Mr. Liberal

14  was actually "under arrest" at any time, the trigger for immunity under section 847(b)(1).[23]  In their

15  Reply, defendants merely suggest Mr. Liberal *could have been* arrested for having front side tinted

16  windows.  Reply at 12.  The Court notes, however, there is a genuine issue of material fact regarding

17  this issue.  Thus, the Court DENIES summary adjudication for all the individual defendants on the

18  basis of immunity under section 847(b)(1).[24]

19  **4.    Privilege to Detain**

20  Defendants assert a privilege insulates them from liability for Mr. Liberal's claim of false

21  imprisonment.  In California, the tort of false imprisonment is defined as "the unlawful violation of

22  the personal liberty of another."  *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 757, 63 Cal.Rptr.2d

23  842 (1997) (internal quotation marks and citation omitted).  For a violation, a confinement must be

---

[22]    This section also provides other bases or methods of *arrest* which trigger this immunity, e.g., a felony warrant, but they are inapplicable here.  *See* Penal Code § 847(b)(2)-(3).

[23]    The Court notes if could find no decision applying this section to a detention.

[24]    Defendants also raise similar arguments under Penal Code section 836.5, which is similar to section 847(b), but applies to "public officers," not "peace officers."  Timothy T. Coates, *et al.*, *California Government Tort Liability Practice*, § 11.9, p. 708.1 (4th ed. Jan. 2008).

1    without lawful privilege.  *Asgari*, 15 Cal.4th at 757.

2           The only claims before the Court that are implicated by this privilege are false imprisonment

3    and those claims allegedly predicated upon it: NIED, intentional infliction of emotional distress

4    ("IIED"), and a violation of section 52.1 of the Civil Code.[25]  The Court notes there is a genuine

5    issue of material fact as to whether Officer Estrada lawfully stopped Mr. Liberal, and thus, whether

6    the ensuing 30-minute detention, which involved all of the individual defendants, was lawful.  As

7    such, summary adjudication on these four claims is DENIED for Officer Estrada as to the stop, and

8    GRANTED for all other individual defendants, but DENIED for all the individual defendants to the

9    extent predicated on the length of detention.

10                         **5.       Privilege to Use Force**

11          Defendants argue they were privileged in their use of force.  Mem. at 11.  Section 835a of the

12   Penal Code states, "Any peace officer who has reasonable cause to believe that the person to be

13   arrested has committed a public offense may use reasonable force to effect the arrest, to prevent

14   escape or to overcome resistance."  *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1273 n.2, 74

15   Cal.Rptr.2d 614 (1998).

16          The claims before the Court that turn on the use of force are assault, battery, and those claims

17   allegedly predicated upon them: NIED, IIED, and a violation of section 52.1 of the Civil Code.  In

18   California, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent

19   injury on the person of another."  Cal. Penal Code § 240.  "A battery is any willful and unlawful use

20   of force or violence upon the person of another."  *Id.* § 242.  Thus, to the extent defendants *lawfully*,

21   i.e, *reasonably* used force on Mr. Liberal, they would not be liable for assault or battery or any

22   claims predicated thereon.  The Court notes there is a genuine issue of material fact as to whether

23   Officers Estrada and Keegan used excessive, i.e., unlawful or unreasonable, force.  As such,

24   summary adjudication for assault or battery, and the claims predicated on either, is DENIED as to

25   Officers Estrada and Keegan, but GRANTED for the other individual defendants who are not shown

26

27   [25]     Section 52.1 does not by itself proscribe any conduct, but is violated when a person "whether
     or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to [do
28   so], with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or
     laws of the United States, or of the rights secured by the Constitution or laws of this state[.]"

1    to have used force on Mr. Liberal.

2    ///

3    ///

4        **B.      Menlo Park**

5        The City asserts that under section 815.2(b) of the Government Code they are immune to the

6    extent the individual defendants who are sued in their individual capacities are immune.  Mem.

7    at 17.  Under section 815.2(a), a public entity is vicariously liable for injuries proximately caused by

8    acts or omissions occurring within the scope of an employee's employment.  Gov. Code § 815.2(a);

9    *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128, 45 P.3d 1171 (2002).  Under section

10   815.2(b), however, "[e]xcept as otherwise provided by statute, a public entity is not liable for an

11   injury resulting from an act or omission of an employee of the public entity where the employee is

12   immune from liability."  *Id.* § 815.2(b); *Zelig*, 27 Cal.4th at 1128.  The Court thus finds defendants

13   are correct, and GRANTS summary adjudication for the City to the same extent as it is granted for

14   the individual defendants.

15                                    **CONCLUSION**

16       ACCORDINGLY, the Court GRANTS in part and DENIES in part defendants' Motion for

17   Summary Judgment or in the Alternative for Summary Adjudication (the "Motion") [Docket No. 38]

18   as follows:

19       (1)      With regards to all claims arising under 42 U.S.C. § 1983, the Court GRANTS

20   summary adjudication for all the individual defendants sued in their official capacities.  With regards

21   to all claims arising under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S.

22   658 (1978), the Court GRANTS summary adjudication for the City of Menlo Park (the "City").

23       (2)      With regards to claims arising under 42 U.S.C. § 1983 or section 52.1 of the

24   California Civil Code ("section 52.1"), and predicated on the search and seizure clause of the Fourth

25   and Fourteenth Amendments, the Court DENIES summary adjudication for: Officer Estrada in his

26   individual capacity, as to the traffic stop itself; Officers Estrada, Wheaton, and Tassio, and Sergeant

27   Prickett in their individual capacities, as to the vehicle search; all individual defendants in their

28   individual capacities, as to the length of the detention; and Officers Estrada and Keegan in their

                                            27

individual capacities, as to the use of excessive force.  The Court GRANTS summary adjudication on these claims for the remaining individual defendants in their individual capacities, as to the traffic stop, the vehicle search, and the use of excessive force.

(3)     With regards to claims arising under 42 U.S.C. § 1983 or section 52.1 and predicated on (a) the Equal Protection clause of the Fourteenth Amendment; or (b) the Fifth Amendment, the Court GRANTS summary adjudication for all defendants.

(4)     With regards to all of Mr. Liberal's claims arising under California law, the Court DENIES summary adjudication for all defendants on the basis of (a) discretionary immunity under Government Code section 820.2; or (b) lawful arrest immunity under Penal Code sections 847(b) or 836.5.

(5)     With regards to claims for false imprisonment, negligence, negligent infliction emotional distress ("NIED"), intentional infliction of severe emotional distress ("IIED"), or a violation of section 52.1, predicated on the traffic stop itself, the Court DENIES summary adjudication for Officer Estrada and the City, but GRANTS summary adjudication for all other defendants.

(6)     With regards to claims for negligence, NIED, IIED, or a violation of section 52.1, predicated on the vehicle search, the Court DENIES summary adjudication for Officers Estrada, Wheaton, and Tassio, Sergeant Prickett, and the City, but GRANTS summary adjudication for the other defendants.

(7)     With regards to claims for false imprisonment, negligence, NIED, IIED, or a violation of section 52.1, predicated on the length of the detention, the Court DENIES summary adjudication for all defendants.

(8)     With regards to claims for assault, battery, negligence, NIED, IIED, or a violation of section 52.1, predicated on the use of force, the Court DENIES summary adjudication for Officers Estrada and Keegan and the City, but GRANTS summary adjudication for all other defendants.

IT IS SO ORDERED.

October 17, 2008

Saundra Brown Armstrong

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28