UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KESNER JUNIOR LIBERAL,<br><br>    Plaintiff,<br><br>  vs.<br><br>EDUARDO R. ESTRADA, individually and in his capacity as a Menlo Park police officer, et al.,<br><br>    Defendants. | Case No: C 07-0024 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Dkt. 106 |

Plaintiff Kesner Junior Liberal ("Plaintiff") brings the instant action under 42 U.S.C. § 1983 alleging that the City of Menlo Park ("City") and several of its police officers violated his constitutional rights during the course of a traffic stop. The parties are presently before the Court on Plaintiff's Motion for Partial Summary Judgment. Dkt. 106. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **BACKGROUND**

   A. **FACTUAL SUMMARY**

The parties are familiar with the facts of this case which are summarized herein only to the extent they are relevant to the instant motion.[1] On October 21, 2005, at around 1:40 a.m., Plaintiff was acting as the designated driver for his two college friends, Keith Hamilton ("Hamilton") and Tony Martinez ("Martinez"), after a night out. Plaintiff and Hamilton are African-American and Martinez is Latino. At that time, Plaintiff was travelling northbound in the middle lane of El Camino Real, a six-lane thoroughfare in Menlo Park, California. Traffic was light and Plaintiff was obeying all traffic laws. Plaintiff claims that his front driver's side and passenger windows were not tinted and were rolled down, and therefore, not visible.

As Plaintiff was driving northbound, Officer Eduardo Estrada of the Menlo Park Police Department was stopped at a stoplight in the left-hand turn lane, facing the southbound direction on El Camino Real. As Plaintiff drove past Officer Estrada, they made eye contact, at which point Officer Estrada made a U-turn and began following Plaintiff. Officer Estrada turned on his patrol car lights, but not his siren. Officer Estrada claims that Plaintiff's driver-side window was rolled up and that he could see that it was tinted, in violation of California Vehicle Code §§ 26708(a)(1) and 26708.5. Plaintiff alleges that he was unsure whether he was being pulled over, and thus, made a right turn onto Oak Grove Avenue, and a left into a Foster's Freeze parking lot, where he stopped.

At high speed, Officer Estrada pulled up behind Plaintiff and shined his light at Plaintiff's car. Officer Estrada testified during his deposition that he exited his vehicle in an excited, agitated and scared state, with his hand on his gun. He ordered the occupants to place their hands up and out the window. They complied. Officer Estrada demanded to see Plaintiff's driver's license and vehicle registration, which Plaintiff provided. Plaintiff

---

[1] This summary is based on the Court's Order on Defendants' earlier motion for summary judgment, See Liberal v. Estrada, No. 07-00024 SBA, 2008 WL 4615542 (N.D. Cal. Oct. 17, 2008) ("Liberal I"), as well as the Ninth Circuit's published opinion affirming that decision, Liberal v. Estrada, 632 F.3d 1064 (9th Cir. 2011) ("Liberal II").

asked why he was stopped.  Officer Estrada responded by accusing him of trying to flee.  Plaintiff denied that they were attempting to do so, however.

Police dispatch logs show that Officer Estrada made the stop at 1:43 a.m.  Within a minute of the stop, Officer Estrada ran a DMV check on Plaintiff and his vehicle.  In addition, he requested back-up, claiming that three subjects were attempting to flee. Officer Keegan was the first to arrive, and within several minutes, Officers Jeff Ayres, Jaime Romero, Jaimee Tassio, Ronald Prickett and Richard Wheaton—essentially the entire Menlo Park Police Department—arrived, as well.

Officer Keegan and/or Officer Estrada ordered Plaintiff to exit his vehicle.  Plaintiff was in the midst of complying with said request, when the officers immediately grabbed his left wrist, pulled him from the car, and spun him around, facing the car's rear door.  One or both officers shoved Plaintiff against the vehicle with such force that it rocked the car to the right.  After the officers handcuffed Plaintiff, Officer Keegan brought him to sit on the front bumper of his police car.  In the meantime, Officer Estrada yelled at Martinez, who was still seated in the back seat, to get off the telephone.  He then removed Martinez from the vehicle, bent him over the trunk of Plaintiff car, and handcuffed him as well.  Officer Estrada repeatedly told Martinez to "shut up."

Officer Estrada continued shouting at Plaintiff and Martinez, demanding to know why they were attempting to leave.  Plaintiff denied that they were attempting to flee. Plaintiff stated that he and his friends were being harassed because of their race, and that he intended to contact a lawyer.  Officer Keegan then pulled out a tape recorder and showed it to Plaintiff.  He then turned on the recorder, and partially <u>Mirandized</u> Plaintiff.  Officer Estrada returned and, unaware that the tape recorder was on, began berating Plaintiff and the others.  Among other things, Officer Estrada accused Plaintiff of trying to "ditch" him and lying about it, repeatedly called Plaintiff and his friends "three little punks," accused them of disrespecting his authority, told them to keep their "mouth shut."  Apparently recognizing the ostensibly extreme nature of his conduct, Officer Estrada commented, "I really don't give a rat's ass who [sic] I piss off.  I don't care about complaints."  After

about twenty-five to thirty minutes, Officer Estrada uncuffed Plaintiff, grabbed Plaintiff by the arm and led him to his car, and asked whether the officers could search his vehicle. Although the officers had already begun to search his car, Plaintiff responded "yes." Plaintiff was then placed in a patrol car.

Throughout the stop, Officers Keegan and Estrada repeatedly asked Plaintiff how much he had to drink. Plaintiff responded that he "probably had two beers," but denied being intoxicated. Officer Estrada performed two nystagmus tests to assess Plaintiff's sobriety. Plaintiff passed the tests. Officer Estrada nonetheless stated that he wished Plaintiff was intoxicated so that he could take him in. Finally, Officer Estrada told Plaintiff and his friends that if they had made a wrong move, he would have "busted a cap" right between their eyes, and that he and his partner liked to go "night target practice." After that, Plaintiff and his friends were allowed to leave. Plaintiff was never told why he was pulled over and none of them was cited for any violation. The day after the incident, Plaintiff made a complaint at the Menlo Park police station, but never heard anything in response.

### B. PROCEDURAL HISTORY

#### 1. Prior Proceedings

Plaintiff filed suit in this Court on January 3, 2007, and filed a First Amended Complaint ("FAC") on September 30, 2007, naming the City, and Officers Estrada, Keegan, Wheaton, Tassio, Prickett, Romero and Ayres (collectively "Individual Defendants") as party-defendants. The FAC alleges eight claims for: (1) unreasonable search and seizure, excessive force, denial of due process and denial of equal protection under 42 U.S.C. § 1983; (2) supervisory liability under 42 U.S.C. § 1983; (3) assault and battery; (4) intentional infliction of emotional distress; (5) negligence; (6) negligent infliction of emotional distress; (7) violation of California Civil Code § 52.1; and (8) false imprisonment. Dkt. 26. These foregoing claims are alleged against all Defendants, except the first claim under § 1983, which is only brought against the Individual Defendants, and the second claim, which is brought against the City. Plaintiff's § 1983 first claim against

the Individual Defendants alleges, inter alia, that they violated his fourth amendment right against unreasonable searches and seizures by conducting an unlawful search of his vehicle, detaining him for an excessive amount of time and using excessive force during the course of the traffic stop.

On July 10, 2008, Defendants filed a motion for summary judgment, which was predicated largely on arguments that they were entitled to qualified immunity and immunity under state law.  Dkt. 38, 45.  On October 17, 2008, the Court issued a written decision granting the motion in part and denying in it in part.  Liberal I, 2008 WL 4615542.  Among other things, the Court ruled that the Individual Defendants were not entitled to qualified immunity on Plaintiff's § 1983 claims or immunity under state law.

The Individual Defendants took an interlocutory appeal from the Court's summary judgment ruling "to the extent that any officer was denied summary judgment on any claim."  Liberal II, 632 F.3d at 1070.[2]  The Ninth Circuit affirmed the Court's determination that the Individual Defendants were not entitled to qualified immunity on Plaintiff's federal claims or discretionary immunity under California Government Code § 820.2 with respect to Plaintiff's false imprisonment claims.  Id. at 1085.  With regard to the remaining issues presented on appeal, the Ninth Circuit held that it lacked jurisdiction to consider those claims and dismissed them.  Id.  The Ninth Circuit spread the mandate on February 20, 2011.  Dkt. 92.

### 2.    Motion Before the Court

On May 26, 2011, the Court held a further case management conference, at which time the Court scheduled this matter for a five-day jury trial to commence on September 19, 2011. Dkt. 95, 96.  The Court also granted Plaintiff leave to submit a motion for partial summary judgment, which he filed on July 12, 2011.  In his motion, Plaintiff contends that he is entitled to summary judgment on his § 1983 claims based on the length of the

---

[2] The Court granted summary judgment for the City, which Plaintiff did not challenge on appeal.

detention and the search of the vehicle, on the ground that these issues were resolved in his favor on appeal. The motion has been fully briefed and is ripe for decision.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. A factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a

1  motion for motion for summary judgment.  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir.
2  2002).

## III.   DISCUSSION

The crux of Plaintiff's motion is that the Ninth Circuit allegedly ruled, as a matter of law, that the Individual Defendants engaged in an unconstitutionally lengthy detention following the traffic stop and that his consent to the search was legally invalid.  This contention is misplaced.  Despite Plaintiff's suggestions to the contrary, the court of appeals did not consider the issue of whether Plaintiff's constitutional rights were, in fact, violated.  Rather, the interlocutory appeal taken by the Individual Defendants was from the Court's ruling that they were not entitled to qualified immunity on Plaintiff's § 1983 claims.  "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

The matter of adjudicating a summary judgment motion based on qualified immunity does not require the Court—or the court of appeal—to ascertain whether a law enforcement officer violated the plaintiff's constitutional law, as a matter of law.  Rather, analysis of whether an officer is entitled to qualified immunity involves two steps.  Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194 (2001)).  "First, a court must decide whether *the facts that a plaintiff has alleged* ... make out a violation of a constitutional right."  Id. (internal citations omitted, emphasis added).  Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Id.  When reviewing an appeal from "the denial of a police officer's assertion of qualified immunity," the appellate court considers the foregoing inquiries, "taking the facts in the light most favorable to the non-moving party[.]"  Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010).

Here, the Ninth Circuit applied the standard set forth above and held that this Court properly denied qualified immunity to the Individual Defendants.  The court of appeal held that, "*constru[ing] the facts in the light most favorable to the Plaintiff*," Liberal II, 632 F.3d

at 1080 n.12 (emphasis added), "an objectively reasonable officer responding to the scene of Plaintiff's detention would have known that its duration of 45 minutes without probable cause, during which the officers were not diligently pursuing their investigation was an unlawful detention of unreasonable duration in violation of clearly established Fourth Amendment law," id. at 1081-82.  With regard to Plaintiff's unreasonable search claim, the court likewise held that "*[c]onstruing the facts in the light most favorable to Plaintiff*, his consent to the search was not voluntary and the search of his car was therefore unconstitutional."  Id. at 1082 (emphasis added).

Thus, the Ninth Circuit did not, as Plaintiff suggests, hold that the Individual Defendants violated his constitutional rights, as a matter of law.  See Forest Grove School Dist. v. T.A., 638 F.3d 1234, 1238 (9th Cir. 2011) (holding that statement made in appellate decision rendered in the same case was not a factual finding that was binding on the district court on remand).  Rather, the court held that, construing the facts in a light most favorable to Plaintiff, the Individual Defendants were not entitled to qualified immunity because a reasonable officer presented with the factual scenario as alleged by Plaintiff would have known that his or her conduct was unconstitutional.  The issue of whether the Individual Defendants actually violated Plaintiff's constitutional rights is a matter for the trier of fact to decide based on the evidence and testimony presented by the parties at trial.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Partial Summary Judgment is DENIED.  This Order terminates Docket 104 and 106.

IT IS SO ORDERED.

Dated: August 24, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge