UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KESNER JUNIOR LIBERAL,<br><br>    Plaintiff,<br><br>  vs.<br><br>EDUARDO R. ESTRADA, individually and in his capacity as a Menlo Park police officer, et al.,<br><br>    Defendants. | Case No: C 07-0024 SBA<br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>Dkt. 127, 128, 129, 130, 131 |

Plaintiff Kesner Junior Liberal ("Plaintiff") brings the instant action under 42 U.S.C. § 1983 alleging that the City of Menlo Park ("City") and City Police Officers Eduardo Estrada, Jeff Keegan, Jeff Ayres, Jaime Romero, Jaimee Tassio, Ronald Prickett and Richard Wheaton, violated his constitutional rights during the course of a traffic stop which occurred on October 21, 2005. A five-day jury trial is scheduled to commence on September 19, 2011.

The parties are now before the Court on the parties' respective motions in limine. Dkt. 127-131. In accordance with Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court, in its discretion, finds that these motions are suitable for resolution without oral argument, and therefore, enters the following rulings.

# I. BACKGROUND

## A. FACTUAL SUMMARY

The parties are familiar with the facts of this case, which are summarized herein only to the extent they are relevant to the instant motions.[1] On October 21, 2005, at around 1:40 a.m., Officer Estrada commenced a traffic stop of Plaintiff, an African-American male, who was driving with two passengers on El Camino Real in Menlo Park, California. Officer Estrada claims that he stopped Plaintiff because his front driver side window was tinted, in violation of the California Vehicle Code. However, Plaintiff contends that his driver side window was not tinted, and that his window was rolled down, and therefore, not visible to Officer Estrada.

After Plaintiff pulled over, Officer Estrada immediately called for back-up. Within minutes, Officers Keegan showed up, and was followed shortly thereafter by Officers Ayres, Romero, Tassio, Prickett and Wheaton—essentially the entire City Police Department. Officer Keegan and/or Officer Estrada ordered Plaintiff to exit his vehicle. Although Plaintiff was complying with said request, the officers immediately grabbed Plaintiff's left wrist, pulled him from the car, spun him around and forcefully shoved him against his car. Officer Estrada accused Plaintiff and his two companions of attempting to flee, which they denied. Plaintiff complained that he was being harassed, and threatened, "I am going to sue you guys for this." Boskovich Decl. Ex. D at 95:23-25, Dkt. 52-4. He also stated words to the effect that, "I sue a lot of cops; that's how I make my money." Id. at 96:2-5. At this point, Officer Keegan then activated his digital audio recorder, and stated: "Everything you say can and will be used against you in a court of law." Boskovich Decl. Ex. A at 1, Dkt. 52-1.

---

[1] This summary is based on the Court's Order on Defendants' earlier motion for summary judgment, See Liberal v. Estrada, No. 07-00024 SBA, 2008 WL 4615542 (N.D. Cal. Oct. 17, 2008) ("Liberal I"), as well as the Ninth Circuit's published opinion affirming that decision, Liberal v. Estrada, 632 F.3d 1064 (9th Cir. 2011) ("Liberal II").

Officer Estrada returned, and, unaware that the tape recorder was on, began berating Plaintiff and the others. Among other things, Officer Estrada accused Plaintiff of trying to "ditch" him and lying about it, repeatedly called Plaintiff and his friends "three little punks," accused them of disrespecting his authority, told them to keep their "mouth[s] shut," and not to "get smart" with him. Apparently recognizing the extreme nature of his conduct, Officer Estrada commented, "I really don't give a rat's ass who [sic] I piss off. I don't care about complaints." After about twenty-five to thirty minutes, Officer Estrada uncuffed Plaintiff, grabbed Plaintiff by the arm and led him to his car, and asked whether the officers could search his vehicle. Although the officers had already begun to search his car, Plaintiff responded "yes." Plaintiff was then placed in a patrol car.

Throughout the stop, Officers Keegan and Estrada repeatedly asked Plaintiff how much he had to drink. Plaintiff responded that he "probably had two beers," but denied being intoxicated. Officer Estrada performed two nystagmus tests to assess Plaintiff's sobriety. Plaintiff passed the tests. Officer Estrada nonetheless stated that he wished Plaintiff was intoxicated so that he could take him in. Finally, Officer Estrada told Plaintiff and his friends that if they had made a wrong move, he would have "busted a cap" right between their eyes, and that he and his partner liked to go "night target practice." After that, Plaintiff and his friends were allowed to leave. Plaintiff was never told why he was pulled over and none of them was cited for any violation. The day after the incident, Plaintiff made a complaint at the City police station, but never heard anything in response.

### B. PROCEDURAL HISTORY

#### 1. Prior Proceedings

Plaintiff filed suit in this Court on January 3, 2007, and filed a First Amended Complaint ("FAC") on September 30, 2007, naming the City, and Officers Estrada, Keegan, Wheaton, Tassio, Prickett, Romero and Ayres as party-defendants. The FAC alleges eight claims for: (1) violation of 42 U.S.C. § 1983; (2) supervisory liability under § 1983; (3) assault and battery; (4) intentional infliction of emotional distress; (5) negligence; (6) negligent infliction of emotional distress; (7) violation of California

Civil Code § 52.1; and (8) false imprisonment. Dkt. 26. The foregoing claims are alleged against all Defendants, except the first claim under § 1983, which is brought against the individual officers, and the second claim, which is brought against the City. Plaintiff's § 1983 claim against the officers alleges, inter alia, that they violated his fourth amendment right against unreasonable searches and seizures by conducting an unlawful search of his vehicle, detaining him for an excessive amount of time and using excessive force during the course of the traffic stop.

On July 10, 2008, Defendants filed a motion for summary judgment. The Court, inter alia, granted summary judgment for Defendants on Plaintiff's claims against the City, as well as Plaintiff's claim for denial of equal protection. Liberal I, 2008 WL 4615542, at *17. The Court rejected Defendants' assertion of qualified immunity and immunity under state law, and denied Defendants' motion with respect to Plaintiff's claims based on the search of his car, the length of his detention and the use of excessive force. Id. The officers took an interlocutory appeal from the Court's summary judgment ruling "to the extent that any [of them] was denied summary judgment on any claim." Liberal II, 632 F.3d at 1070. The Ninth Circuit affirmed the Court's determination that the officers were not entitled to qualified immunity on Plaintiff's federal claims or discretionary immunity under California Government Code § 820.2 with respect to Plaintiff's false imprisonment claims. Id. at 1085. With regard to the remaining issues presented on appeal, the Ninth Circuit held that it lacked jurisdiction to consider those claims and dismissed them. Id. The Ninth Circuit spread the mandate on February 20, 2011. Dkt. 92.

### 2. Motions Before the Court

On May 26, 2011, the Court held a case management conference, at which time it scheduled the case for a five-day jury trial to commence on September 19, 2011. Dkt. 96. In anticipation of trial, Plaintiff has filed two motions in limine. Dkt. 127. First, Plaintiff moves to preclude Defendants from offering any evidence or testimony regarding a subsequent traffic stop involving Plaintiff and Officer Liberal which occurred in 2006, about six months after the October 21, 2005 incident. Second, Plaintiff moves to exclude

any evidence or testimony regarding statements he made to Officer Keegan at the time of the incident that he planned to sue the officers and had sued police officers in the past. Defendants filed an opposition to the motions, to which Plaintiff filed a reply.  Dkt. 132, 134.

Defendants filed four separate motions in limine which seek to preclude Plaintiff from:  (1) offering any character evidence pertaining to Plaintiff or Defendants; (2) eliciting expert testimony from his witnesses; (3) offering evidence relating to physical injuries or financial damages; and (4) offering evidence that his equal protection rights were violated. Dkt. 128, 129, 130, 131.  In his response, Plaintiff indicates that, with limited exceptions, he does not intend to present any evidence or elicit testimony regarding matters which are the subject of Defendants' in limine motions.  Dkt. 133.  Defendants did not file a reply in support of their motions.[2]   The Court now discusses the parties' motions seriatim.

## II. PLAINTIFF'S MOTIONS IN LIMINE

### A. MOTION NO. 1: SUBSEQUENT CONTACT WITH OFFICER ESTRADA

Plaintiff moves to exclude any evidence, testimony or argument relating to an incident in 2006, approximately six months *after* the underlying incident, in which Officer Estrada pulled Plaintiff over on El Camino Real in Menlo Park for reasons undisclosed in the parties' papers.  According to Plaintiff's deposition testimony, during the course of the stop, Officer Estrada "mentioned to him that his windows were illegally tinted and they should be fixed." Defs.' Opp'n at 4.[3]  Plaintiff now argues that such evidence should be

---

[2] The Order for Pretrial Preparation directs the parties to file their motions in limine *in a single memorandum*, not to exceed *fifteen pages*.  Dkt. 96 at 5.  Defendants violated this Order by filing four separate motions which, in aggregate, exceed fifteen pages.  In addition, in view of Plaintiff's response, it is apparent that Defendants did not meet and confer with Plaintiff prior to filing their motions in limine, again, in violation of the Orders of this Court.  Defendants are warned that further transgressions of the Court's Orders may result in the imposition of sanctions.

[3] As support for this assertion, Defendants cite Plaintiff's deposition transcript, which was not provided to the Court with Defendants' opposition.  Nonetheless, the Court sua sponte located Plaintiff's deposition transcript, which was previously submitted to the Court on July 14, 2008 in connection with Defendants' motion for summary judgment. Flegel Decl. Ex. A, Dkt. 43.  The parties are reminded that any factual averments must be supported by citations to the record, including the corresponding docket number.

excluded on the grounds that Officer Estrada's observations in 2006 are not relevant to whether his windows were tinted on October 21, 2005. See Fed. R. Evid. 401, 402. Alternatively, Plaintiff contends that such evidence should be excluded under Federal Rule of Evidence 403, which affords the district court the discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Without citation to any legal authority, Defendants assert that Officer Estrada's post-incident observations of Plaintiff's vehicle "goes to the possible impeachment of the [Plaintiff]" and is relevant "to the history of plaintiff's vehicle with respect to having tinted windows." Defs.' Opp'n at 4-5. These contentions lack merit. In the context of the Fourth Amendment, it is the officer's observations *at the time of the alleged violation* that are germane—subsequent observations are *not*. See United States v. Dunn, 480 U.S. 294, 311 n.11 (1987) ("The critical moment was the appearance of the smokehouse before entry; *subsequent observations as to its condition are irrelevant*."). Moreover, Officer Estrada's comment to Plaintiff during the subsequent traffic stop in 2006 was that "[his] *windows* were tinted and that [he] should get them fixed." Flegel Decl. Ex. A at 56:6-8 (emphasis added). There is nothing in the record establishing that Officer Estrada was referring to Plaintiff's front driver-side side window, as opposed to the other windows on Plaintiff's vehicle. Thus, the Court finds that evidence and/or testimony pertaining to the 2006 traffic stop is not relevant, and is otherwise appropriately excluded under Rule 403. Plaintiff's motion in limine no. 1, therefore, is GRANTED.

### B. MOTION NO. 2: PLAINTIFF'S STATEMENTS

Officer Keegan testified during his deposition that while detained, Plaintiff complained that he was being harassed and that he made comments to the effect of, "I am going to sue you guys for this" and "I sue lots of cops; that's how I make lots of money." Boskovich Decl. Ex. D at 95:23-96:5. Officer Keegan claimed that after Plaintiff made these comments, he turned on his digital audio recorder because he was trained to do so

once a detainee threatens to sue. Id. at 96:15-18. He added, however, that it is "fairly routine" for him to activate his recorder and that he, in fact, does so "[o]n almost every traffic stop—every contact where there is any kind of resistance or other issues." Id. at 96:19-23. Plaintiff does not dispute making such remarks, but contends that they were made in anger, and should be excluded as irrelevant under Rule 402 and unduly prejudicial under Rule 403. Pl.'s Mot. at 4-5.

Defendants claim that Plaintiff's statements are relevant to explain the reason why Officer Keegan activated his recorder; namely, because Plaintiff had threatened legal action. Defs.' Opp'n at 8. However, Defendants never articulate how Officer Keegan's reason for turning on his recorder is germane to any ultimate issue the trier of fact must resolve at trial. In addition, Defendants ignore that Officer Keegan's acknowledgement during his deposition that he activates his recorder during the course of "almost every traffic stop" as a "routine matter." Boskovich Decl. Ex. D at at 96:19-23. As such, Defendants' assertion that Officer Keegan began recording Plaintiff's statements *because of* his threat to sue is inaccurate, if not misleading.

Defendants also contend that Plaintiff's statement "gives support to Officer Keegan's declaration that he never Mirandized the plaintiff, but [that he] only used words he did as a way to inform plaintiff that he was being recorded[.]" Defs.' Opp'n at 8. Defendants assert that if they are not allowed to proffer Plaintiff's threat to sue, "the jury will conclude that Officer Keegan did Mirandize the plaintiff and thus plaintiff could not voluntarily consent to the search of his vehicle." Id. [4] However, the matter of whether Plaintiff was partially Mirandized can be determined from the recording itself, wherein

---

[4] "Whether consent to search was voluntarily given is 'to be determined from the totality of all the circumstances.'" United States v. Brown, 563 F.3d 410, 415 (9th Cir. 2009) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). In this Circuit, courts "consider five factors in determining whether consent was voluntarily given: (1) whether the defendant was in custody; (2) whether the arresting officer had his gun drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told that a search warrant could be obtained." United States v. Vongxay, 594 F.3d 1111, 1119-20 (9th Cir. 2010). "All five factors need not be satisfied in order to sustain a consensual search," id. at 1120, and "no one factor is determinative." Brown, 563 F.3d at 415.

Officer Keegan stated: "Everything you say can and will be used against you in a court of law." Boskovich Decl. Ex. A at 1, Dkt. 52-1. Testimony that Plaintiff threatened to sue the officers has no bearing on the import Office Keegan's recorded statement or whether Plaintiff was Mirandized.

Alternatively, the Court finds that Plaintiff's statement that he makes money by suing police officers is highly inflammatory, and therefore, inadmissible under Rule 403. This Court has found that, "[a]s a general matter, unless the prior lawsuits have been shown to be fraudulent, the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias." Henderson v. Peterson, No. C 07-2838 SBA, 2011 WL 2838169, at *5 (N.D. Cal. July 15, 2011) (granting plaintiff's motion in limine to exclude evidence of plaintiff's prior lawsuits) (Armstrong, J.). In addition, evidence of a plaintiff's litigiousness "is inadmissible character evidence." Id. Here, Plaintiff's statement to the Defendant officers that he would sue them and that he has previously sued other police officers is of marginal probative value and is highly inflammatory.[5] The Court, therefore, GRANTS Plaintiff's second motion in limine.

### III. DEFENDANTS' MOTIONS IN LIMINE

#### A. MOTION NO. 1: CHARACTER EVIDENCE

Defendants' first motion in limine seeks to preclude Plaintiff from offering any "character evidence" relating to him or the seven police officers remaining as Defendants in this action. They also seek to exclude any reference to a prior, state court lawsuit, Butler v. City of Menlo Park, County of San Mateo Superior Court, Case No. CIV568119, in which three African-American police officers accused Officer Prickett, who is named as a Defendant in this case, of making racist slurs. Aside from the Butler action, however, Defendants do not identify the particular character evidence they seek to exclude.

Plaintiff responds that he does not intend to offer any evidence of other lawsuits, but maintains that a blanket in limine ruling barring any character evidence is misplaced, and

---

[5] There is no evidence that Plaintiff has, in fact, filed any other actions against police officers.

1 that specific objections to evidence or testimony must be considered during the course of
2 trial.  The Court is persuaded that it is premature to issue a general in limine order barring
3 the admission of any alleged character evidence.  At this juncture, it is not clear what
4 evidence or testimony the Plaintiff intends to elicit regarding his or the Defendants'
5 "character," as Defendants have identified none.  In any event, such evidence and/or
6 testimony, and any objection thereto, must be considered in the context in which it is being
7 presented and the purpose for which it is being offered.  Accordingly, the Court DENIES
8 Defendants' motion in limine no. 1, without prejudice to Defendants' ability to interposing
9 specific objections at trial.

### B. MOTION NO. 2: EXPERT TESTIMONY

Defendants move to preclude Plaintiff from calling any expert witnesses at trial on the ground that he did not disclose any experts.  Plaintiff responds that he has no intention of calling any experts or eliciting expert opinion testimony from his witnesses.  Therefore, the Court DENIES Defendants' motion in limine no. 2 as moot.

### C. MOTION NO. 3: PHYSICAL INJURIES AND FINANCIAL DAMAGES

Next, Defendants move to preclude Plaintiff from offering evidence or testimony regarding financial damages or medical expenses he incurred as a result of Defendants' conduct.  Plaintiff responds that he has no intention of offering such evidence or testimony at trial.  Nonetheless, Plaintiff asserts that although he is not seeking damages for any physical injury, he "should not be precluded … from describing the physical sensations he experienced at the hands of the defendants, including physical pain, if any."  Pl.'s Opp'n at 4. Defendants did not file a reply brief and have not otherwise objected to such testimony.

In view of Plaintiff's representation that he does not intend to introduce evidence or elicit testimony in support of any claim for physical injuries or financial damages, the Court DENIES Defendants' motion in limine no. 3 as moot.  In addition, given Defendants' lack of objection, the Court will permit Plaintiff to offer testimony regarding physical sensations he experienced during the incident.

D. **MOTION NO. 4: EQUAL PROTECTION**

In its October 17, 2008 Order, the Court granted summary judgment in favor of Defendants on Plaintiff's equal protection claim. Based on that ruling, Defendants move to preclude Plaintiff from offering any evidence or testimony relating to allegations of racial profiling. Dkt. 131. Plaintiff responds that he has no intention of introducing any evidence or testimony in support of his equal protection claim. Nonetheless, Plaintiff contends that he should be permitted to testify regarding the reasons he did not immediately stop his car, including his belief that he was being pulled over because he is an African-American male. Pl.'s Opp'n at 5. Defendants have not opposed Plaintiff's request to offer such testimony.

Given Plaintiff's representation that he does not intend to introduce evidence or elicit testimony in support of his now resolved equal protection claim, the Court DENIES Defendants' motion in limine no. 3 as moot. In addition, in light of Defendants' lack of opposition, Plaintiff may offer testimony regarding his reasons for not immediately pulling over in response to Officer Estrada's activation of his patrol car lights.

IV. **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.  Plaintiff's motion in limine no. 1 is GRANTED.
2.  Plaintiff's motion in limine no. 2 is GRANTED.
3.  Defendants' motion in limine no. 1 is DENIED without prejudice.
4.  Defendants' motion in limine no. 2 is DENIED as moot.
5.  Defendants' motion in limine no. 3 is DENIED as moot.
6.  Defendants' motion in limine no. 4 is DENIED as moot.
7.  This Order terminates Docket 127, 128, 129, 130 and 131.

IT IS SO ORDERED.

Dated: September 6, 2011



SAUNDRA BROWN ARMSTRONG
United States District Judge